# <u>Exhibit C</u>

## AUS Merchant Services, Inc. Non-Prosecution Agreement

**United States Department of Justice**
*United States Attorney's Office*
*District of Rhode Island*

One Financial Plaza, 17th Floor
Providence, Rhode Island 02903

June 29, 2026

Sharon Cohen Levin, Esq.
Sullivan & Cromwell LLP
125 Broad St
New York, NY 10004
***Counsel for AUS Merchant Services, Inc.***

**Re: AUS Merchant Services, Inc. et al. Non-Prosecution Agreement**

Dear Counsel:

The Government and AUS Merchant Services, Inc. ("AUS" or the "Company") enter into this Non-Prosecution Agreement ("Agreement") for misdemeanor violations of the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq.* The Government agrees not to prosecute AUS during the term of this Agreement or thereafter for any violation related to the conduct described in the Statement of Facts, attached hereto as **Attachment A**. The Parties agree to certain terms and obligations as set forth below.

**A. Definitions**

1. In this Agreement, the following terms shall have the meanings provided below. Capitalized terms used but not defined in this Section have the meanings given elsewhere in this Agreement.

a. **"AUS"** means AUS Merchant Services, Inc. (formerly known as Alipay U.S., Inc. and Alipay U.S. Escrow, Inc.), a Delaware company with its principal place of business at 525 Almanor Avenue, Sunnyvale, California 94085.

b. **"Business Day"** means any day other than a Saturday, Sunday, or legal public holiday in the United States (as defined by 5 U.S.C. § 6103(a)).

c. **"Government"** means the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section.

d. **"Parties"** means the Government and AUS.

e. **"Subject Merchandise"** means drugs (as defined in 21 U.S.C. § 321(g)), devices (as defined in 21 U.S.C. § 321(h)), equipment used to manufacture counterfeit drugs (including tableting and encapsulating machines, punches, dies, plates, stones, and other things referenced in 21 U.S.C. §§ 331(i)(2) and 843(a)(5)-(7)), controlled substances (as defined in 21 U.S.C. § 802(6)), listed chemicals or chemical mixtures (as defined in 21 U.S.C. §§ 802(33) and (40)), anabolic steroids (as defined in 21 U.S.C. § 802(41)(A) and (C)), and other items regulated by the FDCA.

**B. Acceptance of Responsibility**

2. AUS admits, accepts, and acknowledges that it is responsible under United States law for the acts of its officers, directors, employees, and agents as set forth in the Statement of Facts provided in **Attachment A** and incorporated by reference into this Agreement, and that the facts described in **Attachment A** are true and accurate.

3. In any prosecution or proceeding against AUS, the Statement of Facts shall be admissible as: (a) substantive evidence offered by the Government in its case-in-chief and rebuttal case; (b) impeachment evidence offered by the Government on cross-examination; and (c) evidence at any sentencing hearing or other hearing. Additionally, AUS shall not assert any claim that the Statement of Facts should be suppressed or is otherwise inadmissible as evidence in any form under the United States Constitution, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, Section 1B1.1(a) of the United States Sentencing Guidelines ("USSG" or "Sentencing Guidelines"), or any other federal rule.

**C. Term of the Agreement**

4. AUS's obligations under this Agreement shall have a term of three years from the date on which the Agreement is executed (the "Term"). AUS agrees, however, that in the event the Government determines, in its sole discretion, acting reasonably, that AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23, or has failed to completely perform or fulfill its material obligations under this Agreement, an extension or extensions of the Term may be imposed by the Government, in its sole discretion, for up to a total aggregate additional time period of one year, without prejudice to the Government's rights to proceed as provided in the below breach provisions of this Agreement. Any extension of the Agreement extends all terms of this Agreement, including the terms of the reporting requirement in **Attachment D** and any tolling periods for any applicable statutes of limitation, for an equivalent period. The Government will provide AUS with written notice specifying the alleged violation in reasonable detail no fewer than thirty (30) calendar days before any extension is imposed, and AUS will have thirty (30) calendar days following receipt of such written notice (the "Extension Cure Period") to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the situation, which explanation the Government shall consider in determining whether to extend the Term. The Government shall provide AUS with a written determination specifying the violation upon which the extension is based and the duration of the extension to be imposed.

**D. <u>Relevant Considerations</u>**

5. The Government enters into this Agreement based on the individual facts and circumstances of this case, including those presented by AUS. These facts and circumstances include, but are not limited to, the following:

a. The nature of the conduct described in the Statement of Facts, which involved payment processing related to Subject Merchandise;

b. AUS's acknowledgement that unlawful activities related to Subject Merchandise were committed by third-party actors on the e-commerce platforms that were owned and operated by Alibaba Group Holding Limited and its relevant subsidiaries ("Alibaba"), including Alibaba.com, and whose payments were processed through AUS;

c. AUS's lack of voluntary disclosure credit based on its failure to timely and voluntarily disclose to the Government the conduct described in the Statement of Facts;

d. Gaps in AUS's compliance program that contributed to the offense conduct, including gaps that occurred before the Company finished implementing remedial measures;

e. AUS's credit for its cooperation with the Government's investigation, which included:

   i. investigating facts and obtaining information as requested by the Government, which allowed the Government to preserve and obtain evidence as part of their own independent investigation;

   ii. at the Government's request, collecting, organizing, and producing voluminous documents in ways that did not implicate foreign data privacy laws;

   iii. assisting in making employees available to be interviewed;

   iv. creating and producing to the Government certain information from its databases of AUS's payment processing related to Subject Merchandise in ways that did not implicate foreign data privacy laws;

   v. making factual presentations to the Government on a wide variety of topics; and

   vi. providing separate counsel to witnesses to facilitate the Government's investigation, where appropriate.

f. AUS's engagement in remedial measures, including terminating business relationships with companies and persons known to have been involved in the conduct described in the Statement of Facts; terminating AUS's customers' and users' abilities to use AUS's services to unlawfully advertise, sell, import or export, distribute, or smuggle Subject Merchandise; making investments in staffing and resources for AUS's legal and compliance teams; updating policies, procedures, and supervisory structures with an emphasis on preventing and detecting the unlawful advertisement, sale, import or export, distribution, and smuggling of Subject Merchandise; strengthening controls and enhancing compliance-related documentation; and expanding employee training;

g. AUS's recognition that ongoing commitments to its compliance program protects U.S.-based consumers and merchants as well as the integrity of the financial system;

h. AUS's agreement to further enhance its corporate compliance programs and internal controls with respect to BSA/AML and FDCA compliance —including risk assessment and review, customer and third-party relationships, transaction monitoring, and suspicious activity reporting—as set forth in **Attachment C**;

i. AUS's agreements to continue to cooperate with the Government as described in Section E; and

j. AUS's lack of prior criminal history.

Accordingly, after considering (a) through (j) above, the Government has determined that the appropriate resolution in this case is this Agreement with AUS with a monetary penalty of $85,000,000 ("Monetary Penalty") assessed against AUS for a misdemeanor violation of the FDCA and a civil forfeiture of $190,000,000 ("Forfeiture Amount").

**E. <u>Cooperation Requirements</u>**

6. AUS shall fully cooperate with the Government on any matter that relates to the: (1) conduct described in this Agreement and the Statement of Facts and any individual or entity referred to therein, as well as any other related conduct under investigation by the Government in connection with Subject Merchandise at any time during the Term, until the later of the date upon which all investigations and prosecutions arising out of such conduct are concluded, or the end of the Term; (2) advertisement, sale, import, export, distribution, or smuggling of Subject Merchandise through AUS's payment-processing services; (3) possible violations of the FDCA by buyers and sellers who use AUS's payment-processing services; and (4) compliance with the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5311 *et seq.*, and AML laws and regulations. AUS's obligations to cooperate with the Government under this Section shall end on the date that the investigations and prosecutions of all such matters conclude or the date that the Term ends, whichever date is later.

7. AUS's cooperation pursuant to this Section is subject to applicable laws and regulations, including valid claims of federal attorney-client privilege and attorney work-product doctrine. If AUS withholds information based on the assertion of any such law, regulation, or privilege, AUS shall provide the Government with a log that describes the withheld information and the foundation of the law, regulation, or privilege within thirty (30) Business Days of making their determination to withhold the information; AUS's cooperation and disclosure obligations under this Section include, but are not limited to, the following:

a. AUS shall designate one or more agents to accept and process the Government's requests for cooperation within fifteen (15) Business Days of signing this Agreement. AUS shall accept the Government's requests for cooperation via email through one or more dedicated email addresses.

b. Within fifteen (15) Business Days of receiving a request for cooperation, AUS shall conduct a diligent search for, and inform the Government whether it has identified, responsive information. If AUS identifies responsive information, AUS shall provide the Government with an estimated timeframe within which it expects to produce the information. Unless otherwise agreed to by the Government, this timeframe shall not exceed sixty (60) calendar days from the date that AUS receives the Government's request.

c. AUS shall provide quarterly reports listing: (1) all Suspicious Activity Reports filed; and (2) any credible allegations of FDCA or Controlled Substances Act violations that AUS learns was committed by users of AUS's payment-processing services in the United States.

d. AUS shall provide complete, truthful, and accurate information to the Government.

e. In its sole discretion, the Government may share any information, testimony, documents, records, or other tangible evidence that AUS provides to the Government with any federal, state, or foreign government authority.

**F. <u>Monetary Penalty</u>**

8. AUS agrees that the Monetary Penalty in the amount of eighty-five million dollars ("$85,000,000" or "$85 million") is appropriate given the facts and circumstances of this case, including the Relevant Considerations described in Section D. AUS agrees to pay the Monetary Penalty of $85 million to the U.S. Treasury no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion.

9. AUS's payment of the Monetary Penalty is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Monetary Penalty is the maximum penalty that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher fine, although the Government agrees that under those circumstances, the Government will

recommend to a court that the Monetary Penalty paid by AUS pursuant to this Agreement be applied toward any fine that a court might impose as part of its judgment against AUS. AUS acknowledges that such a recommendation will not be binding in any court.

10. AUS acknowledges that no U.S. tax deduction may be sought in connection with the payment of any part of the Monetary Penalty. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the penalty amount that AUS pays pursuant to this Agreement.

**G. Civil Forfeiture**

11. AUS acknowledges that money and/or property is subject to civil forfeiture because of overseas merchants' and their United States-based buyers' violations of the FDCA transacted through Alibaba's online platforms, including Alibaba.com. Pursuant to Title 18, United States Code, Section 981(a)(1)(C), AUS consents to civil forfeiture of one hundred ninety million dollars ("$190,000,000 or "$190 million") ("Forfeiture Amount").

12. AUS shall pay the Forfeiture Amount, plus any associated transfer fees, no later than thirty (30) Business Days after the Effective Date of this Agreement in accordance with payment instructions provided by the Government in its sole discretion. AUS hereby releases any and all claims that it may have to the Forfeiture Amount and agrees that the forfeiture of such funds may be accomplished either administratively or judicially at the Government's election, and waives the requirements of any applicable laws, rules, or regulations governing the forfeiture of assets, including those requiring notice of forfeiture. If the Government seeks to forfeit the Forfeiture Amount judicially, AUS waives all requirements pertaining to forfeiture set forth in Title 18, United States Code, Section 983, including the filing of a civil forfeiture complaint as to the Forfeiture Amount and notice of the same, and consent to entry of an order of forfeiture directed to such funds. If the Government seeks to forfeit AUS's Forfeiture Amount administratively, AUS consents to the entry of a declaration of forfeiture and waives the requirements of Title 18, United States Code, Section 983 regarding notice of seizure in non-judicial forfeiture matters.

13. AUS agrees to sign any additional documents necessary to complete forfeiture of the Forfeiture Amount. AUS also agrees that it shall not file any petitions for remission, restoration, or any other assertion of ownership or request for return relating to the Forfeiture Amount, or any other action or motion seeking to collaterally attack the seizure, restraint, forfeiture, or conveyance of the Forfeiture Amount, nor shall AUS assist any others in filing any such claims, petitions, actions, or motions.

14. AUS's payment of the Forfeiture Amount is final and shall not be refunded. Furthermore, nothing in this Agreement shall be deemed an agreement by the Government that the Forfeiture Amount surrendered by AUS is the maximum forfeiture that may be imposed in any future prosecution, and the Government is not precluded from arguing in any future prosecution that a court should impose a higher criminal forfeiture amount or substitute money judgment in a criminal proceeding, although the Government agrees that under those circumstances, the Government will recommend to a court that the Forfeiture Amount paid by AUS pursuant to this Agreement be applied toward any criminal forfeiture or substitute money judgment that a court

might impose as part of its judgment. AUS acknowledges that such a recommendation will not be binding on any court.

15. AUS acknowledges that it shall not claim, assert, or apply for, either directly or indirectly, any tax deduction, tax credit, or any other offset with regard to any U.S. federal, state, or local tax or taxable income in connection with the payment of any part of the Forfeiture Amount. AUS shall not seek or accept, directly or indirectly, reimbursement or indemnification from any source with regard to the Forfeiture Amount that AUS pays pursuant to the Agreement.

## H. Conditional Release from Liability

16. Except as otherwise provided in this Agreement, the Government agrees that it will not bring any criminal or civil case against AUS relating to (i) any of the conduct described in the Statement of Facts of this Agreement; (ii) any of the information disclosed by AUS to the Government as part of this investigation prior to executing this Agreement; or (iii) any information known by the Government prior to the execution of this Agreement that relates to the conduct described in the Statement of Facts to this Agreement. However, the Government may use any information related to the conduct described in the Statement of Facts against AUS: (a) in a prosecution for perjury or obstruction of justice; (b) in a prosecution for making a false statement; or (c) in a prosecution or other proceeding relating to a violation of any provision of Title 26 of the United States Code. Nothing herein shall preclude AUS from presenting this Agreement, and the Government's agreement herein, to any other law enforcement, regulatory, or government authority as evidence of cooperation with, and resolution of claims by, the Government with respect to the conduct described herein.

17. This Agreement does not provide any protection against prosecution for any future conduct by AUS. In addition, this Agreement does not provide any protection against prosecution of any individuals, regardless of their affiliation with AUS.

## I. Corporate Compliance Program

18. AUS shall implement (or continue to the extent already implemented) a corporate compliance program that meets the minimum elements and standards provided in **Attachment C**. AUS's corporate compliance program shall be designed (or continue to the extent already implemented) to detect and prevent violations of the BSA, laws prohibiting money laundering and unlicensed money transmission, other laws prohibiting illicit finance, and violations of the FDCA through AUS's payment processing services. No later than thirty (30) calendar days after the Term expires, AUS, through its Chief Executive Officer and Chief Compliance Officer, will certify to the Government, in the form of executing the document attached as **Attachment E** to this Agreement, that AUS has met its compliance obligations pursuant to this Agreement. Such certification will be deemed a material statement and representation by AUS to the executive branch of the United States for purposes of 18 U.S.C. §§ 1001 and 1519.

19. AUS will periodically review its corporate compliance program and correct any deficiencies within AUS's ethics programs, policies, procedures, systems, and internal controls

regarding compliance with the BSA, laws prohibiting money laundering, and other laws prohibiting illicit finance.

J. **Compliance Monitoring**

20. For the purpose of assessing or determining compliance with this Agreement, the Government may, upon written notice to AUS:

a. require AUS to submit written reports, certifications, or other information relating to compliance with any provision of this Agreement;

b. interview, under oath or otherwise, any of AUS's officers, employees, or agents who may have relevant knowledge; and

c. require AUS to produce documents, communications, data, and other information in its possession, custody, or control relating to compliance with any provision of this Agreement, subject to applicable laws and regulations.

21. AUS shall designate one or more agents of AUS to accept and process the Government's requests related to compliance monitoring within seven (7) Business Days of signing this Agreement. AUS shall accept the Government's requests for compliance monitoring information via email through one or more dedicated email addresses maintained by each company. AUS shall comply with the Government's compliance monitoring requests within thirty (30) calendar days of receiving the Government's written notice. In its sole discretion, the Government may grant extensions of time for AUS to comply with the Government's requests for compliance monitoring information.

K. **Non-Prosecution**

22. The Government agrees that if AUS complies with its obligations under this Agreement, (a) the Government will not bring any criminal case or other enforcement action against AUS or any of its present or former subsidiaries or affiliates relating to any of the conduct described in the Statement of Facts; and (b) at the conclusion of the Term, this Agreement shall expire. In assessing AUS's compliance, the Government shall consider the totality of AUS's conduct under this Agreement and shall not declare a failure to comply based solely on minor, or promptly cured technical violations, which shall be determined at the Government's discretion, acting reasonably. To the extent there is conduct disclosed by AUS that is not set forth in this Agreement, such conduct shall not be exempt from further prosecution and is outside the scope of this Agreement. AUS expressly acknowledges and agrees that this Agreement does not preclude the filing of a case arising from conduct that is not described in this Agreement and the Statement of Facts.

L. **Breach of the Agreement**

23. If, during the Term, AUS (a) commits any felony under United States law; (b) knowingly and willfully provides in connection with this Agreement materially false, incomplete, or misleading information, including in connection with its disclosure of information about individual culpability; (c) knowingly and materially fails to cooperate as provided in Section E of this Agreement; (d) knowingly fails to implement compliance programs in all material respects as provided in Section I of this Agreement and **Attachment C**; or (e) otherwise knowingly and materially fails to perform or fulfill any term or condition of this Agreement, AUS shall be in breach, and thereafter be subject to prosecution for violations of applicable federal law, including, but not limited to, for conduct described in the attached Statement of Facts, regardless of whether the Government obtains knowledge of the breach after the Term expires.

24. Any prosecution resulting from a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, may be pursued by the Government in the United States District Court for the District of Rhode Island or any other appropriate venue. As to the conduct described in the Statement of Facts, AUS knowingly waives any constitutional or statutory right to venue and to presentment to or indictment by a grand jury for felony crimes, and consents to the filing of an information or complaint for said crimes. Determination of whether AUS has breached this Agreement and whether to pursue prosecution shall be in the Government's sole discretion, acting reasonably, after good-faith consideration of any written response submitted by AUS pursuant to Paragraph 26. Any such prosecution may be premised on information provided by AUS.

25. Any prosecution relating to the conduct described in this Agreement or relating to the conduct of AUS in connection with a violation of the FDCA known to the Government prior to the date on which this Agreement was signed that is not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against AUS notwithstanding the expiration of the statute of limitations, for the period between the signing of this Agreement and the expiration of the Term plus six months. Thus, by signing this Agreement, AUS agrees that the statute of limitations with respect to any such prosecution against AUS that is not time-barred on the date of the signing of this Agreement shall be tolled for the Term plus six months. In addition, AUS agrees to toll the running of the statute of limitations as to any violation that occurs during the Term for one year from the date upon which the violation occurs, and that this period shall be excluded from any calculation of time for purposes of the application of any applicable statute of limitations.

26. In the event the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, the Government agrees to provide AUS with written notice of such breach prior to instituting any prosecution resulting from such breach. Written notice of breach shall include: (a) the provision breached; (b) the approximate date of the breach; and (c) a description of the breach sufficient to permit AUS to cure. Within thirty (30) calendar days of receipt of such notice, AUS shall have the opportunity to respond to the Government in writing to explain the nature and circumstances of such breach, as well as the actions AUS has taken to address and remediate the breach, which explanation the Government shall consider in determining whether to pursue prosecution of AUS.

27. In the event that the Government determines that AUS has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23: (a) all statements made by or on behalf of AUS to the Government, including the Statement of Facts, and any testimony given by AUS before a grand jury, a court, or any tribunal, or at any legislative hearings, whether prior or subsequent to this Agreement, and any leads derived from such statements or testimony, shall be admissible in evidence in any and all criminal proceedings brought by the Government against AUS; and (b) AUS shall not assert any claim under the United States Constitution, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, Section 1B1.1(a) of the USSG, or any other federal rule that any such statements or testimony made by or on behalf of AUS prior or subsequent to this Agreement, or any leads derived therefrom, should be suppressed or are otherwise inadmissible. The decision whether conduct or statements of any current officer, director, or employee, or any person acting on behalf of, or at the direction of, AUS will be imputed to AUS for the purpose of determining whether AUS has knowingly and materially violated any provision of this Agreement as defined in Section L, Paragraph 23 shall be in the sole discretion of the Government, acting reasonably.

28. It is further understood that within thirty (30) calendar days after receiving a notice of breach, or to such longer period as the Government may agree in writing, AUS may cure the breach to the Government's reasonable satisfaction ("Cure Period").

29. AUS acknowledges that the Government has made no representations, assurances, or promises concerning what sentence may be imposed by the Court if AUS breaches this Agreement and this matter proceeds to judgment. AUS further acknowledges that any such sentence is solely within the discretion of the Court and that nothing in this Agreement binds or restricts the Court in the exercise of such discretion.

30. On the date that the period of non-prosecution specified in this Agreement expires, AUS, by its respective Chief Executive Officer and the Chief Compliance Officer, shall submit their certification set forth in **Attachment D** and certify to the Government that AUS has met its obligations pursuant to this Agreement. Each certification will be deemed a material statement and representation by AUS in a matter within the jurisdiction of the executive branch of the United States for purposes of Title 18, United States Code, Sections 1001 and 1519, and it will be deemed to have been made in the District of Rhode Island.

## M. Applicability to AUS's Related Business Entities

31. Except as may otherwise be agreed by the Government and AUS in connection with a particular transaction, AUS agrees that in the event that, during the Term, AUS undertakes any change in corporate form, including if AUS sells, merges, or transfers business operations that are material to AUS's consolidated operations, or to the operations of any of its subsidiaries or affiliates involved in the conduct described in the Statement of Facts, as they exist as of the date of this Agreement, whether such sale is structured as a sale, asset sale, merger, transfer, or other change in corporate form, AUS shall include in any contract for sale, merger, transfer, or other

change in corporate form a provision binding the purchaser, or any successor in interest thereto, to the obligations described in this Agreement.

32. The purchaser or successor in interest must also agree in writing that the Government's ability to declare breach under this Agreement is applicable in full force as to that entity. AUS agrees that the failure to include these provisions in the transaction will make any such transaction null and void. AUS shall provide notice to the Government at least thirty (30) calendar days prior to undertaking any such sale, merger, transfer, or other change in corporate form. The Government shall notify AUS within fifteen (15) calendar days if it determines that the transaction(s) will have the effect of circumventing or frustrating the enforcement purposes of this Agreement. If, at any time during the Term, AUS engages in a transaction that has the effect of circumventing or frustrating the enforcement purposes of this Agreement, the Government may deem it a breach of this Agreement pursuant to Section L, paragraph 23 of this Agreement. Nothing in this Agreement shall restrict AUS from indemnifying (or otherwise holding harmless) the purchaser or successor in interest for penalties or other costs arising from any conduct that may have occurred prior to the date of the transaction, so long as such indemnification does not have the effect of circumventing or frustrating the enforcement purposes of this Agreement, as determined by the Government, acting reasonably.

**N. Public Statements by AUS**

33. AUS shall not, through present or future attorneys, officers, directors, employees, agents, or any other person authorized to speak for AUS, make any public statement, contradicting in whole or in part the acceptance of responsibility by AUS as set forth in this Agreement. Any such contradictory statement shall, subject to cure rights of the Company described in this paragraph, constitute a knowing and material breach of this Agreement, as defined in Section L, Paragraph 23, and AUS thereafter shall be subject to prosecution as set forth in this Agreement. The decision whether any public statement by any such person contradicting a fact contained in this Agreement will be imputed to AUS for the purpose of determining whether it has knowingly and materially breached this Agreement, as defined in Section L, Paragraph 23, shall be in the sole discretion of the Government, acting reasonably.

34. If the Government determines that a public statement by any such person contradicts in whole or in part a statement contained in the Statement of Facts, the Government shall notify AUS, and AUS may avoid a breach of this Agreement by publicly repudiating such statement(s) within ten (10) Business Days after notification. AUS shall be permitted to raise defenses and to assert affirmative claims in other proceedings relating to the matters set forth in this Agreement provided that such defenses and claims do not contradict, in whole or in part, a statement contained in this Agreement. This paragraph does not apply to any statement made by any present or former officer, director, employee, or agent of AUS in the course of any criminal, regulatory, or civil case initiated against such individual, unless such individual is speaking on behalf of AUS. Any determination by the Government, acting reasonably, that a public statement constitutes a knowing and material breach of this Agreement shall be subject to the 30-day written notice and opportunity to respond procedure set forth in Paragraph 26 before any prosecution may be initiated.

35. If AUS issues a press release or holds any press conference in connection with this Agreement, AUS shall first consult with the Government to determine: (a) whether the text of the release or proposed statements at the press conference are true and accurate with respect to matters between the Government and AUS; and (b) whether the Government has any objection to the release.

36. The Government agrees, if requested to do so, to bring to the attention of law enforcement and regulatory authorities the facts and circumstances relating to the nature of the conduct underlying this Agreement, including the nature and quality of AUS's cooperation and remediation. By agreeing to provide this information to such authorities, the Government does not agree to advocate on behalf of AUS. Instead, the Government only agrees to provide facts to be evaluated independently by such authorities.

**O. Limitations on Binding Effect of Agreement**

37. This Agreement is binding on AUS and the United States Department of Justice, including the United States Attorney's Office for the District of Rhode Island, the United States Department of Justice's Enforcement & Affirmative Litigation Branch, and the United States Department of Justice's Money Laundering, Narcotics and Forfeiture Section. It does not bind any other federal agencies, or any state, local, or foreign law enforcement or regulatory agencies. The Government shall bring the cooperation of AUS and its compliance with its obligations under this Agreement to the attention of such agencies and authorities if requested to do so by AUS.

**P. Notice**

38. Any notice to the Government under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

Chief, Criminal Division
U.S. Attorney's Office
District of Rhode Island
One Financial Plaza, 17th Floor
Providence, RI 02903

Director, Enforcement & Affirmative Litigation Branch, Civil Division
U.S. Department of Justice
450 5th Street NW, Room 6400 South
Washington, DC 20001

Chief, Bank Integrity Unit
Money Laundering, Narcotics, and Forfeiture Section, Criminal Division
U.S. Department of Justice
1400 New York Avenue NW
Washington, DC 20005

39. Any notice to AUS under this Agreement shall be given by personal delivery, overnight delivery by a recognized delivery service, or registered or certified mail, addressed to:

AUS Merchant Services, Inc.
525 Almanor Avenue
Sunnyvale, CA 94085

40. Notice shall be effective upon actual receipt by the Government or AUS. Notice shall also be given by email to any email addresses designed by the Government or AUS.

**Q. <u>Complete Agreement</u>**

41. The Government and AUS acknowledge that each party has had a full opportunity to negotiate the terms of this Agreement. The rule of construction that interprets contracts against the drafter, therefore, shall not apply to this Agreement. This Agreement, including its attachments, sets forth all the terms of the Agreement between AUS and the Government. No amendments, modifications, or additions to this Agreement shall be valid unless they are in writing and signed by the Government, the attorneys for AUS, and a duly authorized representative of AUS. The following documents are attached to and incorporated into this Agreement:

**Attachment A:** The AUS Merchant Services, Inc. Statement of Facts

**Attachment B:** The AUS Merchant Services, Inc. Certificate of Corporate Resolutions

**Attachment C:** The AUS Merchant Services, Inc. Corporate Compliance Program

**Attachment D:** The AUS Merchant Services, Inc. Disclosure Certification

**Attachment E:** The AUS Merchant Services, Inc. Compliance Certification

**AGREED AND CONSENTED TO:**

***The United States of America***

CHARLES C. CALENDA
First Assistant United States Attorney

Date: 6/29/2026 By: ______________________
Dulce Donovan
Executive Assistant U.S. Attorney

Date: 6/29/2026 By: Julianne Klein
Julianne Klein
Assistant U.S. Attorney

LISA K. HSIAO
Director
Enforcement and Affirmative Litigation Branch,
Civil Division

Date: 6/29/2026 By: ______________________
Patrick R. Runkle
Assistant Director

Date: 6/29/2026 By: ______________________
Colin W. Trundle
Trial Attorney

Date: 6/29/2026 By: ______________________
Cadesby B. Cooper
Trial Attorney

MARGARET A. MOESER
Chief
Money Laundering, Narcotics and Forfeiture
Section, Criminal Division

Date: 6/29/2026 By: ______________________
Rachel N. Agress
Trial Attorney

Date: 6/29/2026 By: ______________________
Elysa Wan
Trial Attorney

**AGREED AND CONSENTED TO:**

***AUS Merchant Services, Inc.***

Date: June 29, 2026 By: Roseate Wagner
Roseate Wagner
Chief Executive Officer and President
AUS Merchant Services, Inc.

Date: June 29, 2026 By: Sharon Cohen Levin
Sharon Cohen Levin, Esq.
Counsel for AUS Merchant Services, Inc.